## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATHAN GOLDSTEIN, individually and on behalf of all others similarly situated, | Civil Action No.: |
| Plaintiff, | The Hon. |
| v. | **PLAINTIFF'S CLASS ACTION COMPLAINT** |
| LASTPASS US LP, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff NATHAN GOLDSTEIN ("Plaintiff" or "Goldstein"), individually and on behalf of all others similarly situated (the "Class" or "Class Members"), brings this action against Defendant LastPass US LP ("LastPass"), seeking monetary damages, restitution, and/or injunctive relief. Plaintiff and the Class make the following allegations upon personal knowledge and on information and belief derived from, among other things, investigation by their counsel and facts that are a matter of public record.

## I.      INTRODUCTION

1.      This lawsuit exists because cybercriminals unsurprisingly targeted a company in the business of storing and managing login credentials, identities, and passwords, literally the "keys to the kingdom" for over 33 million users and 100,000 businesses worldwide. The breach (the "Data Breach") has exposed users' highly sensitive data, including names, billing addresses, email addresses, telephone numbers, IP addresses, and most shocking, entire customer vaults, which store unencrypted data such as website URLs, alongside encrypted data, such as the customer's login name and password for those websites.  These customer vaults can contain additional encrypted data such as secure notes, data used to automatically fill forms, and even images of identifying documents like driver's licenses, health insurance cards, or passports.

1

2.      LastPass is a successful subscription and "freemium"[1]-based identity and password management company, which provides password management services for both individual consumers and companies, and profits handsomely from this service. According to its former parent company's[2] most recent 10-K filing with the SEC in 2020, LastPass is a "market leading password management and single sign on, or SSO, solution that gives individuals, business teams and enterprises the ability to securely store, create and access the user identity and login credentials for thousands of online applications and websites."

3.      The value of this information is recognized by several different constituencies. First, the value is recognized by LastPass, which can attribute its business model to the existence, preservation, and protection of this information. Second, the value is recognized by cybercriminals, who know that this type of data can be exploited for hacking, phishing scams, SIM swaps, and other forms of identity theft. They can also sell this data for other nefarious purposes. And third, the value is recognized by the individuals themselves, including Plaintiff and Class Members whose data was stolen in the Data Breach and whose internet security has been permanently compromised.

4.      LastPass identifies itself as a "pioneer in cloud security technology," a provider of "award-winning password and identity management solutions that are convenient, effortless, and easy to manage."[3] LastPass "values users' privacy and security, so your sensitive information is

---

[1] "Freemium" services are those which are based on a pricing strategy providing a basic service or product free-of-charge, but charging a premium for additional features, services, or goods that expand the functionality of the free version of software.

[2] LogMeIn, Inc. was the parent company of LastPass as of 2020, when it was sold to Francisco Partners and Evergreen Coast Capital Corp., private equity entities that took the company private. As a result, the parent company of LastPass ceased to have SEC reporting requirements as of 2020.

[3] "About LastPass," https://www.lastpass.com/company/about-us (last accessed on January 9, 2023)

always hidden—even from us."[4] LastPass markets its service to everyday internet users, including plaintiff and Class Members, who struggle with managing credentials that are both memorable and complex enough to be secure across multiple websites. LastPass offers a solution to these consumers, including Plaintiff and Class Members, where they can install an extension in their computer browser, or use an app on their mobile device, to eliminate this need by storing all of their login credentials and passwords in a LastPass "vault." A "vault" allows users to store login credentials and passwords for multiple websites or applications under one "master password," which simplifies and centralizes their security credentials.

5.    Millions of individuals have shared their valuable data, including login credentials, passwords, and related names, email addresses, IP addresses, phone numbers, and the URLs of websites with which they maintain logins with LastPass based on the ordinary, reasonable understanding that their information would be handled and maintained with appropriate safety standards—the very services that LastPass was engaged to and promised to perform.

6.    LastPass' represented and marketed that it provided robust cybersecurity protections for consumers, including Plaintiff and Class Members, but in reality its own security program was woefully inadequate. LastPass' unsound, vulnerable systems containing the valuable data described herein (including Plaintiff's and Class Members' login credentials which are the keys to the most valuable accounts of LastPass' many millions of users), were an open invitation for a multi-step intrusion and exfiltration and decryption of valuable data by cybercriminals in the Data Breach, who can now exploit this data to target LastPass' customers, including Plaintiff and Class Members.

---

[4] *Id.*

7.      LastPass, perhaps more than many other internet-based companies, understands how devastating this Data Breach can be. LastPass explicitly markets its services by acknowledging that "Data breaches are on the rise," and that "password security has never been more critical for individuals and businesses" because over 80% of data breaches are caused by weak, reused, or stolen password.[5] Unfortunately, it appears that LastPass did not require its employees to follow its own advice about creating strong passwords.  A threat actor was able to successfully target a LastPass employee, obtain credentials and keys to access and decrypt storage volumes within its cloud-based storage service and exploit source code and technical information stolen from LastPass' development environment to gain customer account information and related metadata including company names, end-user names, billing addresses, email addresses, telephone numbers, and IP addresses from which customers were accessing the LastPass service, and copy backups of customer vault data from encrypted storage containers stored in LastPass' proprietary binary format that contains unencrypted data, such as website URLs, and fully-encrypted sensitive fields such as website usernames, passwords, secure notes, and form-filled data.[6]

8.      Even more concerning, despite its supposed "commitment to transparency"[7] the company has not yet clarified when the Data Breach first occurred. While its own press releases indicate that the Data Breach began sometime after August of 2022, LastPass has thus far refused to provide the precise timing of the event. This is significant because of yet another unanswered question: how long it will take attackers to start "cracking," or guessing, the keys used to encrypt

---

[5] "About LastPass," https://www.lastpass.com/company/about-us (last accessed on January 9, 2023).

[6] Karim Toubba, "Notice of Recent Security Incident," posted December 22, 2022, https://blog.lastpass.com/2022/12/notice-of-recent-security-incident/ (last accessed on January 9, 2023).

[7] *Id.*

the user password vaults stolen from LastPass in the Data Breach. If attackers have had several months with the stolen data (which it appears they have), the situation is even more urgent for impacted LastPass users, including Plaintiff and Class Members, than if hackers have had only a few weeks.

9.      Instead of providing fulsome notice to individuals who were impacted by the Data Breach, including Plaintiff and Class Members, LastPass has downplayed and minimized the incident, insisting that, although users' password vaults and other personally identifying information was exfiltrated by cybercriminals, "it would be extremely difficult to attempt to brute force guess master passwords."[8]

10.     As for what to do now, under the heading "What Should LastPass Customers Do?", LastPass only touts its password security measures, and, as the Data Breach has shown, those security measures did nothing to stop its system from being breached, and will not aid LastPass users, including Plaintiff and Class Members, now:

> Since 2018, [LastPass has] required a twelve-character minimum for master passwords . . . . LastPass utilizes a stronger-than-typical implementation of 100,100 iterations of the Password-Based Key Derivation Function (PBKDF2), a password-strengthening algorithm that makes it difficult to guess your master password.

11.     Indeed, the only advice[9] LastPass offers its users, including Plaintiff and Class Members, is useless, because the proverbial horse has already left the barn.  Judging by LastPass' own press releases, the intrusion into its systems is at least five months old, and LastPass has no

---

[8] *Id.*

[9] *Id.* ("We also recommend that you never reuse your master password on other websites. If you reuse your master password and that password was ever compromised, a threat actor may use dumps of compromised credentials that are already available on the Internet to attempt to access your account (this is referred to as a "credential stuffing" attack)").

meaningful recommendations for how its customers might avoid phishing scams, cracking of their password vaults, or any other identity theft or fraud.

12.     LastPass' unlawfully deficient data security and utter failure, even now, to honestly address the Data Breach has injured millions of its customers, including Plaintiff and Class Members in this action.

## II.     <u>NATURE OF THE ACTION</u>

13.     LastPass describes itself as "a pioneer in cloud security technology," and claims it "provides award-winning password and identity management solutions that are convenient, effortless, and easy to manage."[10] According to LastPass, the company "values users' privacy and security, so your sensitive information is always hidden—even from us."[11] LastPass hopes to market their product to solve the problem many modern internet users face: as consumers "accumulate more online data . . . hackers find new ways to steal it." [12] In response to this growing problem, LastPass offers a service that seeks to make "[f]orgetting passwords . . . a thing of the past." [13] According to its website, through either a browser add-on extension or a mobile device app, a user can allow LastPass to save login credentials and passwords under one "master password," which users, including Plaintiff and Class Members can employ to funnel the correct login and password details to any website they visit on their device. *Id.*

---

[10] "About LastPass," https://www.lastpass.com/company/about-us (last accessed on January 9, 2023).

[11] *Id.*

[12] *Id.*

[13] "The best way to manage passwords," https://www.lastpass.com/how-lastpass-works ) last accessed on January 10, 2023.

14.     LastPass claims that the company's "first priority" is the "safeguarding [of] your data."[14] LastPass offers a suite of services through its primary product, its password manager product, including a "password generator" (which automatically generates "secure passwords" for users),[15] dark web monitoring (which automatically monitors and detects whether a user's information has been exposed online),[16] and a "security dashboard," which provides a central place to check the "health and safety of your accounts."[17] Each of these services is described in more detail below, but LastPass primarily makes its business through the provision of password manager services, provided on subscription plans to individual consumers, "family plan" groups of consumers, and corporate clients.

15.     LastPass touts its own success, claiming over 33 million customers securing their passwords with LastPass, over 100,000 businesses, as well as numerous awards from cybersecurity experts:[18]

---

[14] *Id.*

[15] "Password Generator," https://www.lastpass.com/features/password-generator (last accessed on January 10, 2023).

[16] "Dark Web Monitoring," https://www.lastpass.com/features/dark-web-monitoring (last accessed on January 10, 2023).

[17] "Digital Security Dashboard," https://www.lastpass.com/features/security-dashboard (last accessed on January 10, 2023).

[18] Graphic present on LastPass' homepage, https://www.lastpass.com/ (last asccessed on January 10, 2023).



16.     LastPass describes the "password manager" service it offers as follows:[19]

A password manager is a tool that does the work of creating, remembering and filling in passwords. Simply log into an online account for the first time and LastPass will store your username and password so every time you go back your credentials will be filled in automatically.

17.     LastPass knew that the information it protected for its customers, including Plaintiff and Class members, contained some of their most valuable personal information.

18.     Aside from every login and password that each consumer might link to LastPass, LastPass also stores "personal information," which it describes as "your most valuable documents", such as "passport, credit cards, social security, etc."[20]

19.     LastPass suggests that its customers, including Plaintiff and Class Members, protect their "Banking", "Email" and "Social Media" accounts with the LastPass password manager, effectively encouraging customers to link all their most sensitive accounts to the LastPass password manager.

---

[19] "The Best Free Password Manager," https://www.lastpass.com/password-manager (last accessed on January 10, 2023).

[20] *Id.*

20.     Like other entities that host such information, LastPass knew that hosting such information made it an attractive target for cybercriminals.

21.     Sophisticated companies like LastPass are aware of the types of threat actors across the Internet and the types of security exploits they employ for profit. Accordingly, it is imperative that, as a company specializing in and profiting from providing data security services to others it guard against those exploits.

22.     Particularly prevalent today are iterative attacks, which begin with seemingly innocuous probes of a website by hackers hoping to build knowledge of the infrastructure and to search out potential vulnerabilities, before returning weeks or months later with more powerful tools and better knowledge about the target's defenses. Such is the case here.

23.     LastPass only recently informed its customers that more than one intrusion was made into its system, and that the Data Breach first detected in August of 2022 was more damaging than previously acknowledged. On December 22, 2022, LastPass posted in a notice on its website, that "we have learned that an unknown threat actor accessed a cloud-based storage environment leveraging information obtained from the incident we previously disclosed in August of 2022."[21]

24.     While no customer data was accessed during the August 2022 security incident, LastPass disclosed that source code and technical information was stolen from its development environment, and hackers subsequently used that information to target another employee, obtaining credentials and keys used to access and decrypt storage volumes within the cloud-based storage service.[22]

---

[21]   Toubba, "Notice of Recent Security Incident," posted December 22, 2022, https://blog.lastpass.com/2022/12/notice-of-recent-security-incident/ (last accessed on January 9, 2023).

[22] *Id.*

25.     LastPass announced that cloud storage access keys and dual storage container decryption keys were obtained, and that the threat actor copied information from backups that contained basic customer account information and related metadata including company names, end-user names, billing addresses, email addresses, telephone numbers, and the IP addresses from which customers, including Plaintiff and Class Members, were accessing the LastPass service, before extracting that information.

26.     The release, disclosure, and publication of personally identifying information ("PII") can be devastating alone, and more so when coupled with the login credentials for the dozens, if not hundreds, of different websites an average internet user might frequent. In the immediate term, the copying of password vaults, combined with the time from when the initial intrusion occurred and when LastPass announced the Data Breach, have given cybercriminals months to break into those vaults and compromise the login credentials held there. Such lack of notice has made it much more likely that Plaintiff and Class Members will suffer irreparable harm, including the loss of control over their accounts, including passwords and PII.

27.     The Data Breach also exposes Plaintiff and Class Members to longer-term threats, including identity theft.  For victims of a data breach, the risk of identity theft more than quadruples.[23] A data breach can have grave consequences for victims for many years after the breach—with the obtained information, including PII, identity thieves can wreak many forms of havoc: opening new financial accounts, taking out loans, obtaining medical services, obtaining government benefits, or obtaining driver's licenses in the victims' names, forcing victims to guard against potential misuse of their information, including PII.

---

[23] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, 25 S.C. Law 28, 30 (May 2014).

28.     LastPass was keenly, perhaps uniquely, aware of the risks of cyberattacks and data breaches of its customers' confidential data, including PII. LastPass knew of the risk because it was in the business of helping its customers, including Plaintiff and Class Members, secure their accounts from hacking, phishing, and other infiltration attempts—indeed, that is LastPass' entire business model. When the Data Breach was initially reported, LastPass stated that it had "deployed containment and mitigation measures," and "achieved a state of containment, implemented additional enhanced security measures, and see no further evidence of unauthorized activity," despite the ongoing threat of further intrusion.[24]

29.     It took nearly four months for LastPass to determine that the data stolen and extracted in August of 2022 was valuable enough that it would likely subject LastPass to further security intrusions. In November, 2022, LastPass announced a further intrusion into its systems which included access to customer data, but LastPass provided only vague statements about the incident, and failed to inform its customers, including Plaintiff and Class Members, whether or not their data was compromised. Only after LastPass detected yet further intrusions, including extraction of data from its network, did LastPass inform its customers, including Plaintiff and Class Members, of the potential threats to their most closely protected login credentials and PII.[25]

30.     As a result of the Data Breach, Plaintiff and millions of Class Members have suffered and will continue to suffer concrete and actual harm.[26] Plaintiffs' and Class Members' sensitive PII -including passwords securing their most sensitive accounts - which were entrusted

---

[24] Toubba, "Notice of Recent Security Incident," original post from August 25, 2022 , https://blog.lastpass.com/2022/12/notice-of-recent-security-incident/ (last accessed on January 9, 2023).

[25] *Id.*

[26] *Id.*

to LastPass, was compromised, unlawfully accessed, and made subject to unlawful use by cybercriminals, as a result of the Data Breach.

31.     Despite the desperate need for additional information, to permit LastPass customers, including Plaintiff and Class Members, to assess the extent of the danger to their accounts, including their PII, and to take appropriate protective steps, LastPass has merely offered advice for protection of accounts that would be effective only prior to the Data Breach, and thinly-disguised, rehabilitative marketing. As a result of the Data Breach, and LastPass's refusal to provide consumers, including plaintiff and Class Members, with basic information needed to protect themselves and take specific, preventative measures, customers, including Plaintiff and Class Members incurred, and will continue to incur, out-of-pocket costs.  Such out-of-pocket costs include identity theft protection and insurance services, time spent taking preventative measures and responding to identity theft and fraud.

32.     Had LastPass implemented and maintained an appropriate security program, including proper monitoring of its network, security, and communications, LastPass would have discovered the Data Breach sooner or prevented it altogether. In fact, LastPass has announced it has already "eradicated any further potential access to the LastPass development environment by decommissioning that environment in its entirety and rebuilding a new environment from scratch."[27] LastPass also claims to have "replaced and further hardened developer machines, processes, and authentication mechanisms."[28] Had LastPass made these necessary changes previously, the Data Breach would not have happened, and its customers', including Plaintiff's and Class Members' PII, would not have been accessed, stolen and now at substantial risk.

---

[27] *Id.*

[28] *Id.*

33.     Plaintiff's and Class Members' PII has been compromised and disclosed to unauthorized third parties due to LastPass' negligent and unlawful conduct - the PII that LastPass invited customers, including Plaintiff and Class Members, to collect and maintain on their systems - is now in the hands of unknown cybercriminals. Despite this, LastPass has offered its customers, including Plaintiff and Class Members little or no meaningful redress, such as credit monitoring or fraud protection, and has provided no financial reimbursement for the time or expenses incurred because of the Data Breach.

34.     Consequently, Plaintiff and Class Members have incurred, and will continue to incur, out of pocket costs for purchasing credit monitoring services or credit reports, or spending money or time on protective measures to deter and detect potential identity theft.

35.     As a result of the Data Breach, Plaintiff and Class Members have suffered concrete damages and harm and are now exposed to a heightened and imminent risk of fraud, identity theft, and targeted phishing attacks for years to come. Furthermore, Plaintiff and Class Members must now and in the future closely monitor all accounts secured by LastPass, spend substantial time resetting passwords associated with each of those accounts, and monitor their financial accounts to guard against identity theft at their own expense. Consequently, Plaintiffs and Class Members have incurred and will continue to incur out-of-pocket costs, including the cost of credit monitoring services, credit freezes, credit reports, and other protective measures, to deter and detect identity theft, among other expenses.

36.     By this Complaint, Plaintiff and Class Members seek to remedy these harms on behalf of himself and all similarly situated individuals whose PII was compromised, disclosed, and put at risk, as a result of the Data Breach.

37.     Accordingly, Plaintiff and Class Members bring this action against LastPass seeking redress for its unlawful conduct and assert claims for both common law and statutory damages.

### III.     PARTIES

#### A.     Plaintiff

38.     Plaintiff, Nathan Goldstein, brings this action on behalf of himself and those similarly situated in a representative capacity for individuals across the United States. Despite knowing of the substantial cybersecurity risks it faced, LastPass, through its actions described herein, leaked, disbursed, and furnished Plaintiff's and Class Members' valuable PII to unknown cybercriminals, causing them present, immediate, imminent, and continuing increased risk of harm.

39.     Plaintiff is a resident of Boston, Massachusetts, and resided in that city during the entire period that Plaintiff was a customer and subscriber of LastPass.

40.     Plaintiff purchased an annual subscription for a LastPass Families account on approximately 02/17/21.

41.     Plaintiff stored approximately one hundred and seventy (170) distinct login credentials in his LastPass account.

42.     Plaintiff's name, e-mail address, login credentials for his bank account, retirement account, several investment accounts, and two mobile payment service apps (i.e.: Venmo, Cashapp). were included in the login credentials saved in his LastPass account.

43.     Plaintiff's saved billing information for LastPass also included his name, credit card number, email address, physical address, and telephone number.

44.     Plaintiff's master password had over 24 characters, in compliance with LastPass' best practices for password management.

45.     Since the announcement of the Data Breach, Plaintiff has experienced an increase in phishing attempts via text message.

46.     Since the announcement of the Data Breach, Plaintiff has spent significant time changing the login credentials, including passwords, for the approximately 170 accounts that he used LastPass' service to secure.

47.     Plaintiff did not receive the benefit of his bargain and expected security that LastPass touted throughout its marketing materials.

**B.      LastPass**

48.     Defendant LastPass is a limited partnership organized under the laws of Delaware, with its principal place of business at 333 Summer Street Boston, Massachusetts, 02210.

49.     LastPass is a password and identity management services company.

**IV.      <u>JURISDICTION AND VENUE</u>**

50.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than the Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

51.     This Court has personal jurisdiction over LastPass because LastPass maintains its principal place of business in this District, has sufficient minimum contacts with this District and has purposefully availed itself of the privilege of doing business in this District, such that it could reasonably foresee litigation being brought in this District.

52.     This Court also has diversity jurisdiction over this action. *See* 28 U.S.C. § 1332(a).

53.     Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because the Defendant's principal place of business is located in this District and a substantial part of the events

or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## V.   STATEMENT OF FACTS

### A.   LastPass Offered the Illusion of Protection from Hackers, While Failing to Engage Strong Cybersecurity Measures Themselves

54.   LastPass offered the illusion of protection to its customers, including Plaintiff and Class Members, in the form of a password manager service, which would provide them two distinct, but interlinked, benefits: (1) they would not have to remember dozens, or even hundreds of login names and passwords, and therefore their passwords could be more complex and (and therefore harder to crack); and (2) they could manage all those logins and passwords from a single login and password with LastPass, which would follow them around the internet via a browser extension or mobile app.

55.   LastPass has made its business offering customers, including Plaintiff and Class Members, the opportunity to store their many login names and passwords (hereafter "login credentials") in a "vault," or a single storage space only accessible through LastPass.

56.   Not only can customers, including Plaintiff and Class Members, subscribing to LastPass' service store and access their login credentials, but they can also control and monitor highly sensitive account passwords, cryptocurrency keys, and other personal account information in their customer vaults.

57.   LastPass advertises their password management service because of the rise in data breaches, proclaiming on its website that "80% of breaches caused by weak, reused, or stolen passwords."[29]

---

[29] "About Us," https://www.lastpass.com/company/about-us (last access on January 13, 2023).

58.     Impressing how necessary and essential its service is, LastPass offers this dire warning: "Doing nothing could mean losing everything. That's why password security has never been more critical for individuals and businesses."[30]

59.     The solution (according to LastPass) is to subscribe to LastPass' "Password Vault" service, which LastPass describes as "like a physical safe but for your online valuables."[31]

60.     LastPass offers its customer, including Plaintiff and Class Members, the ability to store "everything you've saved including passwords, secure notes, and credit card information," and even offers a handy "browser extension, LastPass will automatically capture account passwords as you enter them on every website."[32]

61.     Customers, including Plaintiff and Class Members, secure their Password Vaults, in which they can (and do) store login credentials for an unlimited number of websites, as well as their credit card information, social security numbers, and other sensitive information and/or PII, with a "master password," which LastPass claims "are never sent to LastPass' servers, and are never accessible by LastPass."[33]

**B.     LastPass Failed to Comply with Industry and Regulatory Standards**

62.     In support of its offers of safety and security in its product, LastPass claims that "security is our number one priority" and that its cybersecurity protections are "SOC 2 Type II compliant."[34]

---

[30] *Id.*

[31] "Password Vault Software," https://www.lastpass.com/features/password-vault (last accessed on January 13, 2023).

[32] *Id.*

[33] *Id.*

[34] *Id.*

63.     However, not all of LastPass' security claims appear to be accurate. For instance, LastPass only requires 100,100 iterations of the PBKDF2 algorithm[35] to secure customers' master passwords, which is well below the standard 310,000 iterations recommendation by the Open Web Application Security Project ("OWASP").[36]

64.     Indeed, it appears that LastPass has failed to update its master password encryption requirements since as early as 2018, a lifetime by cybersecurity standards.[37]

65.     LastPass did not incorporate these protective measures into its requirements, despite its claim that "[w]e routinely test the latest password cracking technologies against our algorithms to keep pace with and improve upon our cryptographic controls."[38]

66.     Even LastPass' claims that its password requirements are sufficient is inaccurate: while LastPass leads its customers to believe that a twelve-character minimum for master passwords "greatly minimizes the ability for successful brute force password guessing," and that "it would take millions of years to guess your master password using generally-available password-cracking technology," modern graphics cards used at guessing what PBKDF2-protected passwords are can currently guess such a password "in slightly more than two months on the same

---

[35] "About Password Iterations," https://support.lastpass.com/help/about-password-iterations-lp030027 (last accessed on January 13, 2023). LastPass uses the PBKDF2 algorithm to change a customer's master password into a login hash string which is communicated to LastPass to authenticate the customer as the correct user.

[36]     https://cheatsheetseries.owasp.org/cheatsheets/Password_Storage_Cheat_Sheet.html#pbkdf2 (last accessed January 13, 2023).

[37] "What's in a PR statement: LastPass breach explained," https://palant.info/2022/12/26/whats-in-a-pr-statement-lastpass-breach-explained/ (last visited on January 13, 2023).

[38] Toubba, Karim "Notice of Recent Security Incident," https://blog.lastpass.com/2022/12/notice-of-recent-security-incident/ (last accessed on January 13, 2023).

graphics card," and those speeds are getting faster.[39] This is particularly troubling, considering the fact that, while LastPass requires new customers to use a twelve-character master password to secure their password vault, when that change was made in 2018 the company did not require, and has not since required, that current customers update their shorter, less-secure master passwords to a twelve-character minimum.[40]

67.    Despite claiming many features designed to protect customer password vaults from direct attacks, which appear to have been haphazardly employed at best, LastPass also did not manage its own cybersecurity systems to ensure that copies were not made of customer password vaults, including the password vaults belonging to Plaintiff and Class Members.

### C.    LastPass' Failures Resulted in a Data Breach and the Exposure of Customer Data

68.    The Data Breach, despite LastPass' initial assurances that it "was limited to a four-day period in August 2022," actually was a deliberate, methodical and continuing invasion of LastPass' security systems, culminating in the copying of customer password vaults, including the password vaults belonging to Plaintiff and Class Members.

69.    The first notice from LastPass to its customers, including Plaintiff and Class Members, was released on August 25, 2022, and indicated that on approximately August 15, 2022, LastPass had detected what it called "some unusual activity within portions of the LastPass development environment."[41]

---

[39] "What's in a PR statement: LastPass breach explained," https://palant.info/2022/12/26/whats-in-a-pr-statement-lastpass-breach-explained/ (last visited on January 13, 2023).

[40] *Id.*

[41] Toubba, Karim "Notice of Recent Security Incident," https://blog.lastpass.com/2022/12/notice-of-recent-security-incident/ (last accessed on January 13, 2023).

70.     In that initial blog post, LastPass claimed that the Data Breach was caused by a "single compromised developer account" allowing an unauthorized hacker to take "portions of source code and some proprietary LastPass technical information."[42] There was no description provided as to which portions of the source code, and what technical information was stolen.[43]

71.     LastPass claimed that it had "deployed containment and mitigation measures, and engaged a leading cybersecurity and forensics firm" and that it had "achieved a state of containment, implemented additional enhanced security measures, and see no further evidence of unauthorized activity."[44]

72.     Shockingly, despite clear indications to LastPass that a determined hacker was targeting its system and planning on exploiting source code, LastPass provided an "FAQ" to its customers, including Plaintiff and Class Members, that informed them that they "don't recommend any action on behalf of our users."[45]

73.     A month after the Data Breach began, LastPass released a second blog post, on September 15, 2022, to "update" its customers, including Plaintiff and Class Members, on the "conclusion" of its investigation and "to provide transparency and peace-of-mind to our consumer and business communities."[46]

74.     LastPass claimed that it had completed its investigation after securing cybersecurity incident response company Mandiant, and that during a four-day period in August of 2022, a "threat actor gained access to the Development environment using a developer's compromised

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

endpoint."[47] Buried in the blog post - and for the first time - LastPass revealed that the threat actor

had managed to defeat LastPass' multifactor authentication.[48]

75.     LastPass sought to dismiss any potential concern that user master passwords,

password vaults, login credentials, or PII was implicated in the breach: [49]

> Firstly, the LastPass Development environment is physically separated from, and
> has no direct connectivity to, our Production environment. Secondly, the
> Development environment does not contain any customer data or encrypted
> vaults.  Thirdly, LastPass does not have any access to the master passwords of our
> customers' vaults—without the master password, it is not possible for anyone other
> than the owner of a vault to decrypt vault data as part of our Zero Knowledge
> security model.

76.     Along with assurances that LastPass had "partnered with a leading cyber security

firm to further enhance our existing source code safety practices" and "deployed enhanced security

controls including additional endpoint security controls and monitoring," LastPass made this

fateful promise: "We recognize that security incidents of any sort are unsettling but want to assure

you that your personal data and passwords are safe in our care."[50]

77.     LastPass concluded that these opening attacks were the last to come. LastPass was

wrong.

78.     On November 30, 2022, LastPass posted an update to its security incident blog,

informing its customers, including Plaintiff and Class Members, that it had "detected unusual

activity within a third-party cloud storage service" shared by LastPass and its affiliate, GoTo.

LastPass also admitted that it had determined the "unauthorized party, using information obtained

---

[47] *Id.*

[48] *Id.* ("the threat actor utilized their persistent access to impersonate the developer once the
developer had successfully authenticated using multi-factor authentication.").

[49] *Id.*

[50] *Id.*

in the August 2022 incident, was able to gain access to certain elements of our customers' information."[51]

79.     LastPass admitted that it did not at the time know "the scope of the incident" or "what specific information has been accessed," and indicated that it was continuing to "deploy enhanced security measures and monitoring capabilities across our infrastructure to help detect and prevent further threat actor activity."[52]

80.     Again, LastPass did not make any specific recommendations about security measures LastPass customers, including Plaintiff and Class Members, should take, beyond pointing to LastPass's password best practices.[53]

81.     Then, finally, on December 22, 2022, more than four months after the initial intrusion, LastPass revealed that an "unauthorized party" had not only "gained access to a third-party cloud-based storage service" but had also obtained "cloud storage access key and dual storage container decryption keys."[54]

82.     Once the threat actor had accomplished this, LastPass admits that "the threat actor copied information from backup that contained basic customer account information and related metadata including company names, end-user names, billing addresses, email addresses, telephone numbers, and the IP addresses from which customers were accessing the LastPass service."[55]

83.     As if this was not enough, the threat actor "was also able to copy a backup of customer vault data from the encrypted storage container," containing "both unencrypted data,

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

such as website URLs, as well as fully-encrypted sensitive fields such as website usernames and passwords, secure notes, and form-filled data."[56]

84.    The fact that the threat actor was able to copy and extract whole customer password vaults means that the threat actor now has a limitless amount of time to crack the passwords on those vaults, and LastPass customers, including Plaintiff and Class Members, have no way of resetting their passwords to prevent this from occurring.

85.    After this revelation, LastPass informed its customers that it had "eradicated any further potential access to the LastPass development environment by decommissioning that environment in its entirety and rebuilding a new environment from scratch," "replaced and further hardened developer machines, processes, and authentication mechanisms," "added additional logging and alerting capabilities to help detect any further unauthorized activity including a second line of defense with a leading managed endpoint detection and response vendor to supplement our own team," and began "actively rotating all relevant credentials and certificates that may have been affected and supplementing existing endpoint security."[57] LastPass did not explain why such additional security measures were not implemented in August of 2022, or why they were not in place already, to better secure its environments against threat actors intent on causing harm and stealing its customers PII.

86.    LastPass also stated that it was "performing an exhaustive analysis of every account with signs of any suspicious activity within our cloud storage service, adding additional safeguards within this environment, and analyzing all data within this environment to ensure we understand

---

[56] *Id.*

[57] *Id.*

what the threat actor accessed."[58] Again, LastPass did not offer an explanation as to why these security protections were not in place in advance of the Data Breach, or at the very least, employed as soon as LastPass became aware of the intrusion in August.

> **D.** **Data Breaches Put Consumers at Increased Risk of Fraud and Identify Theft**

87. PII is valuable property. Its value is axiomatic, considering the market value and profitability of "Big Data" to corporations in America. Illustratively, Alphabet Inc., the parent company of Google, reported in its 2020 Annual Report a total annual revenue of $182.5 billion and net income of $40.2 billion.[59] $160.7 billion of this revenue derived from its Google business, which is driven almost exclusively by leveraging the PII it collects about the users of its various free products and services. America's largest corporations profit almost exclusively through the use of PII illustrating the considerable market value of PII.

88. Criminal law also recognizes the value of PII and the serious nature of the theft of PII by imposing prison sentences. This strong deterrence is necessary because cybercriminals extract substantial revenue through the theft and sale of PII. Once a cybercriminal has unlawfully acquired PII, the criminal can demand a ransom or blackmail payment for its destruction, use the PII to commit fraud or identity theft, or sell the PII to other cybercriminals on the black market.

89. Cybercriminals use "ransomware" to make money and harm victims. Ransomware is a widely known and foreseeable malware threat in which a cybercriminal encrypts a victim's computer such that the computer's owner can no longer access any files or use the computer in any way. The cybercriminal then demands a payment for the decryption key. Ransomware is

---

[58] *Id.*

[59] Alphabet Inc., Annual Report (Form 10-K) at 32 (Feb. 3, 2021), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001652044/000165204421000010/goog-20201231.htm.

typically propagated through phishing, spear phishing, or visiting a malicious or compromised website that contains a virus or other malware.

90.     Once stolen, PII can be used in many ways. PII can be offered for sale on the "dark web," a heavily encrypted part of the Internet that makes it difficult for authorities to detect the location or owners of a website. The dark web is not indexed by normal search engines such as Google and is only accessible using a Tor browser (or similar tool), which aims to conceal users' identities and online activity. The dark web is notorious for hosting marketplaces selling illegal items such as weapons, drugs, and PII. Websites appear and disappear quickly, making it a dynamic environment.

91.     The U.S. government, various U.S. and international law enforcement agencies, cybersecurity industry groups and laboratories, and numerous industry trade groups have issued warnings and guidance on managing and mitigating phishing and ransomware threats. There are industry best practices for cybersecurity related to phishing and ransomware, some of which are particularly effective.

92.     For example, in 2019, both Microsoft and Google have publicly reported that using multi-factor authentication ("MFA") blocks more than 99% of automated hacks, including most ransomware attacks that occur because of unauthorized account access. Likewise, the reputable SANS Software Security Institute issued a paper stating "[t]ime to implement multi-factor authentication!"[60] An example of MFA implementation is receiving a text with a code when you

---

[60] Matt Bromiley, *Bye Passwords: New Ways to Authenticate* at 3, SANS Software Security Inst. (July 2019), https://query.prod.cms.rt.microsoft.com/cms/api/am/binary/RE3y9UJ [https://perma.cc/ZSW9-QUEW]. Matt Bromiley, *Bye Passwords: New Ways to Authenticate* at 3, SANS Software Security Inst. (July 2019), https://query.prod.cms.rt.microsoft.com/cms/api/am/binary/RE3y9UJ [https://perma.cc/ZSW9-QUEW].

input your username and password into a website; even if a cybercriminal knew your username and password, the cybercriminal would not be able to see the code on your phone and would thus be blocked from accessing your online account.

93. In this regard, implementing MFA "can block over 99.9 percent of account compromise attacks."[61]

94. The FBI concurs, listing "applying two-factor authentication wherever possible" as a best practice to defend against ransomware attacks.[62]

95. The industries that Lastpass serves have seen a substantial increase in cyberattacks and data breaches since as early as 2016.[63]

96. Indeed, cyberattacks have become so notorious that the FBI and Secret Service issued a warning in 2019 to potential targets so they were aware of, and prepared for, a potential attack.[64]

97. The U.S. Government Accountability Office ("GAO") released a report in 2007 regarding data breaches finding that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[65]

---

[61] *What Is Multi-Factor Authentication (MFA)?*, Consensus Techs. (Sept. 16, 2020), https://www.concensus.com/what-is-multi-factor-authentication/#:~:text=The%20proof%20 that%20MFA%20works,percent%20of%20account%20compromise%20attacks [https://perma.cc/RKT2-LX5Z].

[62] *Ransomware Victims Urged to Report Infections to Federal Law Enforcement*, FBI (Sept. 15, 2016), https://www.ic3.gov/Media/Y2016/PSA160915[https://perma.cc/NB42-8ADB].

[63] *Id.*

[64] Kochman, *supra* n.171.

[65] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* ("GAO Report") at 2, GAO (June 2007), https://www.gao.gov/assets/270/262899.pdf [https://perma.cc/GCA5-WYA5].

98.     The FTC recommends that identity theft victims take several steps to protect their personal health and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and to consider an extended fraud alert that lasts for seven years if identity theft occurs), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[66]

99.     Cybercriminals use stolen PII such as social security numbers ("SSNs") for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

100.    Identity thieves can also use SSNs to obtain a driver's license or other official identification card in the victim's name, but with the thief's picture; use the victim's name and SSN to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house or receive medical services in the victim's name, seek unemployment or other benefits, and may even give the victim's PII to police during an arrest resulting in an arrest warrant being issued in the victim's name. A study by the Identity Theft Resource Center ("ITRC") shows the multitude of harms caused by fraudulent use of personal and financial information:

---

[66] *Identity Theft Recovery Steps*, FTC, https://www.identitytheft.gov/Steps (last visited Mar. 23, 2021) [https://perma.cc/ME45-5N3A].



Source: Identity Theft Resource Center    creditcards·com [67]

101.    As set forth above, 96.7% of study subjects experienced costs or other harms from the criminal activity.[68] As illustrated in the above graphic, this includes devastating results such as "I lost my home/place of residence" and "I couldn't care for my family." Moreover, the harms of identity theft are not limited to the affected individual and may adversely impact other associated persons and support systems, including government assistance programs. In the ITRC study, nearly one third of survey respondents had to request government assistance because of identity theft, such as welfare, EBT, food stamps, or similar support systems.[69] The ITRC study concludes that

---

[67] Jason Steele, *Credit Card and ID Theft Statistics*, Creditcards.com (updated Oct. 24, 2017), https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php    [https://web.archive.org/web/20171215215318/https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php].

[68] *Id.*

[69] *Id.*

"identity theft victimization has an extreme and adverse effect on each individual as well as all of the support systems and people associated with the individual."[70]

102.    PII is a valuable property right.[71] Its value is axiomatic, considering the value of Big Data in corporate America as well as the consequences of cyber thefts resulting in heavy prison sentences. This obvious risk to reward analysis illustrates that Private Information has considerable market value that is diminished when it is compromised.

103.    It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used. According to the GAO, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[72]

PII is such an inherently valuable commodity to identity thieves that, once it compromised, criminals often trade the information on the cyber black-market for years.

104.    Furthermore, data breaches that expose any personal data, and in particular non-public data of any kind (*e.g.*, donation history or hospital records), directly and materially increase

---

[70] *Id.*

[71] *See, e.g.*, John T. Soma et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *1 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.").

[72] GAO Report, *supra* n.65, at 29.

the chance that a potential victim is targeted by a spear phishing attack in the future, and spear phishing results in a high rate of identity theft, fraud, and extortion.[73]

105.    There is a strong probability that much of the information stolen in the Data Breach has not yet been made available on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Indeed, some of the Class Members are in very early stages of their lives—in their twenties and thirties. Thus, as the respective Notices advise, customers, including Plaintiff and Class Members, must vigilantly monitor their financial accounts for many years to come.

### E.    LastPass Fails, and Continues to Fail, to Inform Customers of the True Extent of the Data Breach

106.    LastPass has made a show of continuing to provide "transparency"[74] in its Data Breach updates but has failed to provide a complete and accurate picture of the risks currently facing LastPass customers, including Plaintiff and Class Members.

107.    Since August 22, 2022, the beginning of this on-going Data Breach, LastPass has yet to announce a single actionable recommendation. LastPass has continually referred to its

---

[73] *See* Kelion & Tidy, *supra* n.**Error! Bookmark not defined.** (concluding that personal information such as "names, titles, telephone numbers, email addresses, mailing addresses, dates of birth, and, more importantly, donor information such as donation dates, donation amounts, giving capacity, philanthropic interests, and other donor profile information . . . . in the hands of fraudsters, [makes consumers] particularly susceptible to spear phishing—a fraudulent email to specific targets while purporting to be a trusted sender, with the aim of convincing victims to hand over information or money or infecting devices with malware").

[74] Toubba, Karim "Notice of Recent Security Incident," https://blog.lastpass.com/2022/12/notice-of-recent-security-incident/ (last accessed on January 13, 2023).

"password best practices,"[75] which it claims will prevent hackers from using "brute force to guess [the] master password and decrypt the copies of vault data they took."[76]

108.    LastPass's claims ignore the fact that, with time and resources, any password can be brute forced, a fact not known as widely by most consumers, including Plaintiff and Class Members, but well-known to cybersecurity experts, and well-known to LastPass.

109.    Indeed, all of LastPass' suggestions are self-serving attempts to shift liability to its customers, including Plaintiff and Class Members, if their password is brute-forced. In its December post, under the heading "What Should LastPass Customers Do?" LastPass states only the following:[77]

- Since 2018, we have required a twelve-character minimum for master passwords. This greatly minimizes the ability for successful brute force password guessing.

- To further increase the security of your master password, LastPass utilizes a stronger-than-typical implementation of 100,100 iterations of the Password-Based Key Derivation Function (PBKDF2), a password-strengthening algorithm that makes it difficult to guess your master password. You can check the current number of PBKDF2 iterations for your LastPass account here.

- We also recommend that you never reuse your master password on other websites. If you reuse your master password and that password was ever compromised, a threat actor may use dumps of compromised credentials that are already available on the Internet to attempt to access your account (this is referred to as a "credential stuffing" attack).

---

[75] "What is the LastPass Master Password?," https://support.lastpass.com/help/what-is-the-lastpass-master-password-lp070014.

[76] Toubba, Karim "Notice of Recent Security Incident," https://blog.lastpass.com/2022/12/notice-of-recent-security-incident/ (last accessed on January 13, 2023).

[77] *Id.*

110.    None of the advice provided by LastPass is actually a recommendation for future actions, but instead are steps customers *should have taken in advance of the data breach* to protect themselves from the possibility of a brute force attack on their password vault.

111.    Instead of steps Plaintiff and Class Members could take to protect themselves from a future hack, credential-stuffing or phishing activity, such as changing individual site passwords, obtaining credit and dark web monitoring, and freezing their credit, LastPass told its customers, including Plaintiff and Class Members, this: "There are no recommended actions that you need to take at this time."[78]

112.    LastPass does explain that if a customer's "master password does not make use of the defaults above, then it would significantly reduce the number of attempts needed to guess it correctly" and advises that, if this is the case, customers "consider minimizing risk by changing passwords of websites" they have stored.[79] However, LastPass has not contacted its customers, including Plaintiff and Class Members, to inform them if their passwords do not meet LastPass' minimum thresholds, even if those minimum thresholds themselves are potentially insufficient, considering the development of brute-forcing technology and the growth in technical prowess of hackers and cybercriminals.

113.    LastPass' notifications of the Data Breach have failed to provide sufficient information or recommendations to its customers, including Plaintiff and Class Members, and have attempted to shift blame for any compromise of PII to its customers, including Plaintiff and Class Members.

---

[78] *Id.*

[79] *Id.*

114.   As a result of LastPass' deficient notifications, Plaintiff and Class Members do not have an understanding of the risks currently facing them. These risks are real and imminent, and LastPass is under a duty to provide information to its customers, including Plaintiff and Class Members, to permit them to protect themselves from further compromise. LastPass has either failed, or refused, to do this.

## VI.   CLASS ACTION ALLEGATIONS

115.   Plaintiff brings this action on his own behalf and on behalf of all natural persons similarly situated, as referred to throughout this Complaint as "Class Members."

116.   Pursuant to Fed. R. Civ. P. 23, Plaintiff proposes the following Nationwide Class definitions, subject to amendment as appropriate:

> **Nationwide Class**: All natural persons residing in the United States whose PII was compromised, extracted, copied, stolen, or otherwise exposed as a result of the Data Breach.

117.   Excluded from the Class and Subclasses are LastPass' officers, directors, and employees; any entity in which LastPass has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of LastPass. Excluded also from the Class and Subclasses are members of the judiciary to whom this case is assigned, their families and members of their staff.

118.   **Numerosity.** The members of the Class (and Subclasses) are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on LastPass' own statements, the Class consists of over 33 million persons whose data was compromised in the Data Breach, who can be identified by reviewing the PII exfiltrated from Last Pass' databases.

119.   **Commonality.** There are questions of law and fact common to Plaintiff and Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.     Whether LastPass' data security systems and/or protocol prior to and during the Data Breach complied with applicable data security laws and regulations;

b.     Whether LastPass' data security systems and/or protocol prior to and during the Data Breach were consistent with industry standards and best practices;

c.     Whether LastPass properly implemented its purported security measures to protect Plaintiff's and the Class's PII from unauthorized capture, dissemination, and misuse;

d.     Whether LastPass took reasonable measures to determine the extent of the Data Breach after it first learned of same;

e.     Whether LastPass disclosed Plaintiff's and the Class's PII in violation of the understanding that the PII was being disclosed in confidence and should be maintained;

f.     Whether LastPass willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the Class's PII;

g.     Whether LastPass was negligent in failing to properly secure and protect Plaintiff's and the Class's PII;

h.     Whether LastPass was unjustly enriched by its actions; and

i.     Whether Plaintiff and the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

120.   **Typicality.** Plaintiff's claims are typical of those of the Class Members because Plaintiff's PII, like that of every Class Member, was compromised in the Data Breach.

121.   **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of Class Members, including those from states and jurisdictions where he does not reside. Plaintiff's Counsel are competent and experienced in litigating class actions and have been appointed lead counsel by many different courts in many other class action suits.

122. **Predominance.** LastPass has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' data at issue here was secured by LastPass and accessed during the Data Breach. The common issues arising from LastPass' conduct affecting Class Members, as described *supra*, predominate over any individualized issues. Adjudication of the common issues in a single action has important and desirable advantages of judicial economy.

123. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for LastPass. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

124. **Injunctive Relief is Appropriate.** LastPass has failed to take actions to safeguard Plaintiff's and Class Members' PII such that injunctive relief is appropriate and necessary. LastPass has acted on grounds that apply generally to the Class (and Subclasses) as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## VII.   CAUSES OF ACTION

### COUNT 1: NEGLIGENCE
### On behalf of the Nationwide Class

125.   Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

126.   Upon LastPass' acceptance and storage of Plaintiff's and Class Members' PII in its system, LastPass undertook and owed a duty to Plaintiff and the Class to exercise reasonable care to secure and safeguard that PII and to use commercially reasonable methods to do so.

127.   LastPass knew that the PII was highly sensitive and confidential and should be protected as such.

128.   LastPass owed a duty of care not to subject Plaintiff's and the Class's PII to an unreasonable risk of exposure and theft because Plaintiff and the Class were foreseeable and probable victims of any inadequate data security practices.

129.   LastPass owed numerous duties to Plaintiff and the Class, including the following:

a.   to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting PII in its possession;

b.   to protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices, including at least 310,000 password iterations as recommended by OWASP; and

c.   to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

d.   to timely notify all potentially affected parties, including Plaintiff and Class Members, of the potential for identity theft, fraud, phishing scams, and other risks they may encounter as a result of the Data Breach.

130.   LastPass also breached its duty to Plaintiff and Class Members to adequately protect and safeguard PII by disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII.

131.    LastPass further failed to provide adequate supervision and oversight of the PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of compromise and misuse, which permitted malicious cybercriminals to copy and extract Plaintiff's and Class Members' PII and intentionally disclose it to others and/or misuse it without consent, resulting in the harms alleged herein.

132.    LastPass knew, or should have known, of the risks inherent in collecting and storing Plaintiff's and Class Members' PII and the importance of adequate data security.

133.    LastPass knew, or should have known, that its data systems and privacy protocols and procedures would not adequately safeguard Plaintiff's and Class Members' PII.

134.    LastPass breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems, networks, and/or data security practices to safeguard Plaintiff's and Class Members' PII.

135.    Because LastPass knew that the theft of the highly sensitive data stored in its systems would damage millions of individuals and businesses, including Plaintiff and Class Members, LastPass had a duty to implement sufficient privacy practices and procedures and adequately protect its data systems and the PII contained therein.

136.    LastPass' duty of care to use reasonable data security measures arose as a result of the special relationship that existed between LastPass and Plaintiff and Class Members. LastPass was the only party able to ensure that its systems and protocols were sufficient to protect against the foreseeable risk of harm to Class Members from the compromise of the data with which it was entrusted.

137.   LastPass' duty to use reasonable care in protecting confidential data arose because LastPass was bound by industry standards to do more to protect the confidential data that was compromised because of the Data Breach.

138.   LastPass' conduct alone created a foreseeable risk of harm to Plaintiff and Class Members and their PII. LastPass' misconduct included failing to (1) secure Plaintiff's and Class Members' PII; (2) comply with industry standard security practices; (3) implement adequate system and event monitoring; and (4) implement the systems, policies, and procedures necessary to prevent the Data Breach.

139.   LastPass breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII, and by failing to provide timely notice of the Data Breach. The specific negligent acts and omissions committed by LastPass include, but are not limited to, the following:

a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b.   Failing to adequately monitor the security of its networks and systems;

c.   Allowing unauthorized access to Class Members' PII;

d.   Failing to detect in a timely manner that Class Members' PII had been compromised; and

e.   Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for fraud and other damages.

140.   Through LastPass' acts and omissions described in this Complaint, including its failure to provide adequate data security and protect Plaintiff's and Class Members' PII from being

foreseeably accessed, stolen, disseminated, and misused, LastPass unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' PII during the time it was within LastPass' possession and control.

141.    LastPass' conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to, failing to adequately protect the PII, and failing to provide Plaintiff and Class Members with timely notice that their sensitive PII had been compromised.

142.    Neither Plaintiff nor Class Members contributed to the Data Breach and subsequent misuse of their PII as described in this Complaint. Any and all actions taken by Plaintiff and Class Members which LastPass may argue contributed to the misuse of the compromised PII were reasonable under the circumstances.

143.    As a direct and proximate result of LastPass' negligence, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

144.    Plaintiff and Class Members are also entitled to injunctive relief requiring LastPass to (i) strengthen its data security systems and monitoring procedures; and (ii) submit to future bi-annual audits of those systems and monitoring procedures.

### COUNT 2: BREACH OF CONTRACT/BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### On behalf of the Nationwide Class

145.    Plaintiff repeats, realleges, and incorporates by reference preceding paragraphs 1 through 124 as though fully set forth herein.

146.    Plaintiff and Class Members entered into valid and enforceable express contracts with LastPass under which Plaintiff and Class Members agreed to provide their PII to LastPass, and LastPass agreed to provide password and identity management services that included the

implementation of adequate data security standards, protocols, and procedures to ensure the protection of Plaintiff's and Class Members' PII.

147.   In every contract entered into between Plaintiff and Class Members and LastPass, including those at issue here, there is an implied covenant of good faith and fair dealing obligating the parties to refrain from unfairly interfering with the rights of the other party or parties to receive the benefits of the contracts. This covenant of good faith and fair dealing is applicable here as LastPass was obligated to protect (and not interfere with) the privacy and protection of Plaintiff's and Class Members' PII.

148.   To the extent LastPass' obligation to protect Plaintiff's and Class Members' PII was not explicit in those express contracts, the contracts also included implied terms requiring LastPass to implement data security adequate to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII, including in accordance with trade regulations, federal, state and local laws, and industry standards. No customer would have entered into these contracts with LastPass without the understanding that their PII would be safeguarded and protected; stated otherwise, data security was an essential term of the parties' express contracts.

149.   Indeed, Section 4.2 of LastPass' Terms of Service for Personal Users states that LastPass "ha[s] implemented and maintain appropriate organizational, administrative, and technical safeguards designed to protect your Content against any unauthorized access, loss, misuse, or disclosure."

150.   Plaintiff and Class Members agreed, among other things, to provide their PII in exchange for LastPass' agreement to protect the confidentiality of that PII.

151.   The protection of Plaintiff's and Class Members' PII was a material aspect of Plaintiff's and Class Members' contracts with LastPass, because Plaintiff and Class Members

would not have provided their PII to LastPass, or allowed LastPass to control the passwords allowing access to their PII, if they had known that LastPass did not plan to provide this promised protection.

152.    LastPass' promises and representations described above relating to industry standards and LastPass' purported concern about its users' privacy rights are express terms of the contracts between LastPass and its customers, including Plaintiff and Class Members. LastPass breached these promises by failing to comply with reasonable industry practices.

153.    Plaintiff and Class Members read, reviewed, and/or relied on statements made by or provided by LastPass and/or otherwise understood that LastPass would protect its customers' PII if that information were provided to LastPass.

154.    Plaintiff and Class Members fully performed their obligations under their contracts with LastPass; however, LastPass did not.

155.    As a result of LastPass' breach of these terms, Plaintiff and Class Members have suffered a variety of damages including but not limited to: the lost value of their privacy; not receiving the benefit of their bargain with LastPass; losing the difference in the value between the services with adequate data security that LastPass promised and the services actually received; the value of the lost time and effort required to mitigate the actual and potential impact of the Data Breach on their lives, including, inter alia, that required to change multiple account passwords, the master password, monitor accounts, and file police reports and reports with the FBI. Additionally, Plaintiff and Class Members have been put at increased risk of future fraud and/or misuse of their PII, which may take years to manifest, discover, and detect.

156.    As a direct and proximate result of LastPass' breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class Members have suffered injury and are entitled

to damages, including restitution, unjust enrichment and disgorgement in an amount to be proven at trial, declaratory and injunctive relief, and attorney fees, costs, and expenses.

## COUNT 3: BREACH OF IMPLIED CONTRACT
### On behalf the Nationwide Class

157.    Plaintiff repeats, realleges, and incorporates by reference preceding paragraphs 1 through 124 as though fully set forth herein.

158.    Plaintiff brings this claim alternatively to his claim for breach of contract.

159.    Through its course of conduct, LastPass entered into implied contracts with Plaintiff and Class Members for the provision of password and identity management services, as well as implied contracts for LastPass to implement data security practices adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

160.    Specifically, Plaintiff entered into a valid and enforceable implied contract with LastPass when he first began using LastPass' services in or around February of 2021.

161.    The valid and enforceable implied contracts to provide password and identity management services that Plaintiff and Class Members entered into with LastPass include LastPass' promise to protect nonpublic PII entrusted to it.

162.    When Plaintiff and Class Members provided their PII to LastPass in exchange for LastPass' services, they entered into implied contracts with LastPass pursuant to which LastPass agreed to reasonably protect such information.

163.    LastPass solicited and invited Plaintiff and Class Members to provide their PII as part of LastPass' regular business practices. Plaintiff and Class Members accepted LastPass' offer and provided their PII to LastPass.

164.    By entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that LastPass' data security practices complied with relevant laws and regulations and were consistent with industry standards.

165.    Under these implied contracts, LastPass promised and was obligated to: (a) provide password and identity management services to Plaintiff and Class Members; and (b) protect Plaintiff's and the Class Members' PII provided to obtain such benefits of such services. In exchange, Plaintiff and members of the Class agreed to turn over their PII to LastPass.

166.    Both the provision of password and identity management services and the protection of Plaintiff's and Class Members' PII were material aspects of these implied contracts.

167.    The implied contracts for the provision of password and identity management services, including but not limited to, the maintenance of the privacy of Plaintiff's and Class Members' PII, are also acknowledged, memorialized, and embodied in LastPass' Terms of Service for personal users.

168.    LastPass' express representations, including, but not limited to, the express representations found in its Terms of Service, memorialize and embody the implied contractual obligations requiring LastPass to implement data security adequate to safeguard and protect the privacy of Plaintiff and Class Members, and to protect the privacy of Plaintiff's and Class Members' PII.

169.    Users of password management services value their privacy and the ability to keep their PII associated with obtaining such services. Plaintiff and Class Members would not have entrusted their PII to LastPass and entered into these implied contracts with LastPass without an understanding that their PII would be safeguarded and protected; nor would they have entrusted

their PII to LastPass in the absence of the implied promise by LastPass to monitor the PII and to ensure that it adopted reasonable administrative and data security measures.

170.    Plaintiff and Class Members agreed in fact with LastPass to provide their PII in exchange for, among other things, both the provision of password management services and the protection of their PII.

171.    Plaintiff and Class Members performed their obligations under the contract when they turned over their PII to LastPass.

172.    LastPass materially breached its contractual obligation to protect the nonpublic PII it gathered when the PII was compromised and subsequently misused as a result of the Data Breach.

173.    LastPass materially breached the terms of these implied contracts, including, but not limited to, the terms stated in the relevant Terms of Service. LastPass did not maintain the privacy of Plaintiff's and Class Members' PII as evidenced by its recent notices of the Data Breach posted on its blog. Specifically, LastPass did not comply with industry standards or otherwise protect Plaintiff's and Class Members' PII as set forth above.

174.    The Data Breach was a reasonably foreseeable consequence of LastPass' data security failures in breach of these contracts.

175.    As a result of LastPass' failure to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive the full benefit of their bargain with LastPass, and instead received services that were of a diminished value to that described in the contracts. Plaintiff and Class Members therefore were damaged in an amount at least equal to the difference in the value of the password management accounts with data security protection that LastPass agreed to provide and the services LastPass actually provided.

176.    Had LastPass disclosed that its administrative and data security measures were inadequate or that it did not adhere to industry-standard security measures, neither Plaintiff, Class Members, nor any reasonable person would have utilized services from LastPass.

177.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and suffered, and will continue to suffer, actual damages and injuries, including without limitation, the release and disclosure of their PII, the loss of control of their PII, the imminent risk of suffering additional damages in the future, out of pocket expenses, and the loss of the benefit of the bargain they struck with LastPass.

178.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

179.    Plaintiff and Class Members are also entitled to injunctive relief requiring LastPass to, e.g., strengthen its data security systems and monitoring procedures, and immediately provide adequate credit monitoring to all Class Members.

## COUNT 4: BREACH OF FIDUCIARY DUTY
### On behalf of the Nationwide Class

180.    Plaintiff repeats, realleges, and incorporates by reference preceding paragraphs 1 through 124 as though fully set forth herein.

181.    Plaintiff and Class Members have an interest, both equitable and legal, in the PII that was conveyed to and collected, stored, and maintained by LastPass and which was ultimately compromised by unauthorized cybercriminals as a result of the Data Breach.

182.    LastPass, in taking possession of this highly sensitive information, formed a special relationship with its customers, including Plaintiff and the Class.

183.   Plaintiff and the Class Members put their trust and confidence in LastPass' judgment, honesty, and integrity in protecting their PII and the various accounts that could be accessed through use (or misuse) of that PII.

184.   LastPass knew that Plaintiff and Class Members were relying on LastPass, and accepted this trust and confidence when it accepted PII from Plaintiff and Class Members.

185.   As a result of that special relationship, LastPass was provided with and stored private and valuable information belonging to Plaintiff and the Class, which LastPass was required by law and industry standards to maintain in confidence.

186.   In light of the special relationship between LastPass and Plaintiff and Class Members, whereby LastPass became a guardian of Plaintiff's and Class Members' PII, LastPass undertook a fiduciary duty to act primarily for the benefit of its customers, including Plaintiff and Class Members, for the safeguarding of Plaintiff's and Class Members' PII.

187.   LastPass had a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of this relationship, in particular, to keep secure Plaintiff's and Class members' PII and to maintain the confidentiality of their PII.

188.   LastPass owed a duty to Plaintiff and Class Members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

189.   Plaintiff and Class Members have a privacy interest in their personal and proprietary matters and LastPass had a duty not to disclose or allow unauthorized access to such confidential information.

190.    Plaintiff's and Class Members' PII is not generally known to the public and is confidential by nature. Moreover, Plaintiff and Class Members did not consent to nor authorize LastPass to release or disclose their PII to unknown criminal actors.

191.    LastPass breached its fiduciary duty to Plaintiff and Class Members when Plaintiff's and Class Members' PII was disclosed to unknown criminal hackers by way of LastPass' own acts and omissions, as alleged herein.

192.    LastPass knowingly breached its fiduciary duties by failing to safeguard Plaintiff's and Class Members' PII, including by, among other things:

    a.    mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of the PII;

    b.    mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

    c.    failing to design and implement information safeguards to control these risks;

    d.    failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

    e.    failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

    f.    failing to detect the Data Breach at the time it began or within a reasonable time thereafter and give adequate notice to Plaintiff and Class Members thereof;

    g.    failing to follow its own privacy policies and practices published to its customers;

    h.    storing PII in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and

    i.    making an unauthorized and unjustified disclosure and release of Plaintiff's and Class Members' PII to a criminal third party.

193.     But for LastPass' wrongful breach of its fiduciary duties owed to Plaintiff and Class Members, their privacy would not have been compromised and their PII would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by and/or viewed by unauthorized third parties.

194.     As a direct and proximate result of LastPass' breach of its fiduciary duties, Plaintiff and Class Members have suffered or will suffer injuries, including but not limited to, the following: loss of their privacy and confidentiality of their PII; theft of their PII; costs associated with the detection and prevention of fraud and unauthorized use of their PII; costs associated with purchasing credit monitoring and identity theft protection services; costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the LastPass' Data Breach—including finding fraudulent charges, enrolling in credit monitoring and identity theft protection services, and filing reports with the police and FBI; the imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII being placed in the hands of criminals; damages to and diminution in value of their PII entrusted, directly or indirectly, to LastPass with the mutual understanding that LastPass would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others; continued risk of exposure to hackers and thieves of their PII, which remains in LastPass' possession and is subject to further breaches so long as LastPass fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and/or mental anguish accompanying the loss of confidence and disclosure of their PII.

195.     LastPass breached its fiduciary duty to Plaintiff and Class Members when it made an unauthorized release and disclosure of their confidential PII and, accordingly, it would be

inequitable for LastPass to retain the benefits it has received at Plaintiff's and Class Members' expense.

196.    Plaintiff and Class Members are entitled to damages and/or disgorgement or restitution, in an amount to be proven at trial.

### COUNT 5: DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
### On behalf of the Nationwide Class

197.    Plaintiff repeats, realleges, and incorporates by reference preceding paragraphs 1 through 124 as though fully set forth herein.

198.    Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

199.    Under the Uniform Declaratory Judgment Act, Mass. Gen. Laws Chapter 231A *et seq.*, this Court is authorized to enter a judgment making binding declarations of right, duty, status and other legal relations between parties. The Court also has broad authority to restrain acts, such as here, that are tortious and violate the terms of the regulations described in this Complaint.

200.    An actual controversy has arisen in the wake of the Data Breach regarding LastPass' present and prospective duties to reasonably safeguard users' PII and whether LastPass is maintaining data security measures adequate to protect the Class Members, including Plaintiff, from further data breaches that compromise their PII, including but not limited to, their respective customer vaults.

201.    Plaintiff alleges that LastPass' data-security measures remain inadequate. LastPass denies these allegations and attempts to cast the blame of the harm suffered by Plaintiff and Class Members upon Plaintiff and Class Members themselves. In addition, Plaintiff and the Class continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that

further compromises of their PII and continued fraudulent activity against them will occur in the future.

202.    Pursuant to its authority under the Declaratory Judgment Act, Plaintiff asks the Court to enter a judgment declaring, among other things, the following: (i) LastPass owes a duty to secure consumers' PII and to timely notify consumers of a data breach; and (ii) LastPass is in breach of these legal duties by failing to employ reasonable measures to secure consumers' PII in its possession and control.

203.    Plaintiff further asks the Court to issue corresponding prospective injunctive relief requiring LastPass to employ adequate security protocols consistent with law and industry standards to protect consumers' PII from future data breaches.

204.    If an injunction is not issued, Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at LastPass. The risk of another such breach is real, immediate, and substantial. If another breach at LastPass occurs, Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and Class Members will be forced to bring multiple lawsuits to rectify the same misconduct.

205.    The hardship to Class Members if an injunction does not issue exceeds the hardship to LastPass if an injunction is issued. Among other things, if a similar data breach occurs again due to the repeated misconduct of LastPass, Class Members will likely be subjected to substantial hacking and phishing attempts and other damage, in addition to the damages already suffered. On the other hand, the cost to LastPass of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and LastPass has pre-existing legal obligations to employ such measures.

206.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing additional data breaches at LastPass, thus eliminating the additional injuries that would result to Class Members and the millions of consumers whose personal and confidential information would be further compromised.

### COUNT 6: MASSACHUSETTS CONSUMER PROTECTION ACT,
### Mass. Gen. Laws Ann. Ch. 93A, §§ 1, *et seq*.
### On behalf of the Nationwide Class

207.    Plaintiff repeats, realleges, and incorporates by reference preceding paragraphs 1 through 124 as though fully set forth herein.

208.    This claim is brought individually under the laws of Massachusetts and on behalf of all other natural persons whose PII was compromised as a result of the Data Breach and reside in states having similar laws regarding consumer protection.

209.    LastPass, Plaintiff and Class Members are "persons" as meant by Mass. Gen. Laws. Ann. Ch. 93A, § 1(a).

210.    LastPass operates in "trade or commerce" as meant by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

211.    LastPass advertised, offered, or sold goods or services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

212.    Plaintiff sent a demand for relief on behalf of himself and Class Members pursuant to Mass. Gen. Laws Ann. Ch. 93A § 9(3) on February 10, 2023.

213.    LastPass engaged in unfair methods of competition and unfair and deceptive acts

and practices in the conduct of trade or commerce, in violation of Mass. Gen. Laws Ann. Ch. 93A,

§ 2(a), including:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members'Private Information, which was a direct and proximate cause of the Data Breach;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members'PII, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Massachusetts Data Security statute and its implementing regulations, Mass. Gen. Laws Ann. Ch. 93H, § 2; 201 Mass. Code Regs. 17.01-05, which was a direct and proximate cause of the Data Breach;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members'PII, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members'PII, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Massachusetts Data Security statute and its implementing regulations, Mass. Gen. Laws Ann. Ch. 93H, § 2; 201 Mass. Code Regs. 17.01-05;

f.    Failing to timely and adequately notify Plaintiff and Class Members of the Data Breach;

g.    Misrepresenting that certain sensitive PII was not accessed during the Data Breach, when it was;

h.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members'PII; and

i.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members'PII, including duties imposed by the FTC Act, 15 U.S.C. § 45 and the Massachusetts Data Security statute and its implementing regulations, Mass. Gen. Laws Ann. Ch. 93H, § 2; 201 Mass. Code Regs. 17.01-05.

214.    LastPass' acts and practices were "unfair" because they fall within the penumbra

of common law, statutory, and established concepts of unfairness, given that LastPass solely held

the true facts about its inadequate security for PII, which Plaintiff and Class Members could not independently discover.

215.    LastPass' representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and Class Members, that their PII was not exposed and misled Plaintiff and Class Members into believing they did not need to take actions to secure their identities.

216.    Consumers could not have reasonably avoided injury because LastPass' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of its data security, LastPass created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

217.    LastPass' inadequate data security had no countervailing benefit to consumers or to competition.

218.    LastPass intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions. LastPass' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of LastPass' data security and ability to protect the confidentiality of consumers' PII.

219.    LastPass acted intentionally, knowingly, and maliciously to violate Massachusetts's Consumer Protection Act, and recklessly disregarded Plaintiff's and Class Members' rights.

220.    As a direct and proximate result of LastPass' unfair and deceptive trade practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity

theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII .

221.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, double or treble damages, injunctive or other equitable relief, and attorneys' fees and costs.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For an Order certifying this action as a class action and appointing Plaintiff and his Counsel to represent the nationwide Class;

B.    For equitable relief enjoining LastPass from engaging in the wrongful conduct complained of herein pertaining to the lax data security practices, procedures, networks, and systems that led to the unauthorized disclosure and subsequent misuse of Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members or to mitigate further harm;

C.    For equitable relief compelling LastPass to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

D.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of LastPass' wrongful conduct;

E.    For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

F.    For an award of punitive damages, as allowable by law;

G.    For an award of attorneys' fees and costs, and any other expense, including reasonable expert witness fees;

H.      Pre- and post-judgment interest on any amounts awarded; and

I.      Such other and further relief as this court may deem just and proper.

## IX.      JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all claims so triable.

Dated this 10th day of February, 2023          Respectfully submitted,


/s/ James Gotz
James Gotz (MA Bar No. 567157)
Steve Rotman (MA Bar No. 558473)
**HAUSFELD LLP**
One Marina Park Drive
Suite 1410
Boston, MA 02210
Tel.: (617) 207-0600
Fax: (617) 830-8312
Email: jgotz@hausfeld.com
Email: srotman@hausfeld.com

James J. Pizzirusso*
**HAUSFELD LLP**
888 16th Street, N.W.
Suite 300
Washington, D.C. 20006
Tel.: (202) 540-7200
Fax: (202) 540-7201
Email: jpizzirusso@hausfeld.com

Steven M. Nathan*
**HAUSFELD LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004
Tel.: (646) 357-1100
Fax: (212) 202-4322
Email: snathan@hausfeld.com

Amy Keller*
James A. Ulwick*
**DiCELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602

Tel: (312) 214-7900
Fax: (312) 253-1443
Email: akeller@dicellolevitt.com
       julwick@dicellolevitt.com


***Counsel for the Plaintiff***

*\* Pro Hac Vice Applications*
*Forthcoming*